UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KENNETH BELL,

          Plaintiff,

-vs-                                Case No.  5:04-cv-50-Oc-10GRJ

GEORGIA-PACIFIC CORPORATION,

          Defendant.

_____

## O R D E R

    This is an action pursuant to Florida's Whistleblower's Act, § 448.102(3), Fla. Stat., and Workers' Compensation Law, § 440.205, Fla. Stat., brought by Kenneth Bell against his former employer, Georgia-Pacific Corporation.[1] The Plaintiff contends that Georgia-Pacific took certain adverse employment actions against him because he complained of unsafe working conditions and also that it fired him because he filed a workers' compensation claim. The case is before the Court on the Defendant's motion for summary judgment (Doc. 37) and the Plaintiff's response (Doc. 38).[2] For the reasons that follow, the Defendant's motion is due to be granted in all respects.

---

[1] Jurisdiction is founded on diversity of citizenship and amount in controversy. 28 U.S.C. § 1332. The case was originally filed in state court and was timely removed. Doc. 1.

[2] Also before the Court are the Defendant's motion for leave to file a reply brief (Doc. 39), motion to strike portions of the Plaintiff's response to the motion for summary judgment (Doc. 40), and motion to continue the trial (Doc. 43).  These motions are due to be denied as moot.

**Background and Facts**

This case arises out of the Plaintiff's employment at the Defendant's lumber mill in Cross City, Florida. The Plaintiff was hired in February of 2003 as a laborer in the "chip and saw" mill. By August of that year, the Plaintiff was promoted to the night-shift saw operator. As a saw operator, the Plaintiff sat in an enclosed cab with one other employee, David Ables,[3] and used a "joystick" to control a massive saw blade that cut logs coming down a conveyor belt. The Plaintiff's immediate supervisor was Kevin Hodge. Hodge reported to plant superintendent Ronnie Pinner, who reported to plant manager Kenneth Sparks. The mill's "safety environmental supervisor" was Ronald Steinmeyer.

On November 11, 2003, the Plaintiff orally complained to Sparks that Hodge and Ables were "harassing" him and that their behavior was making the work environment unsafe. In particular, the Plaintiff complained to Sparks that (1) Ables sprayed Windex and put small objects into the Plaintiff's fan, causing the Windex and objects to blow onto the Plaintiff, (2) Ables played his music too loud in the cab, (3) Hodge threw firecrackers into his and other cabs, (4) Hodge placed a running chainsaw into his and other cabs, filling the cabs with smoke, (5) Hodge or someone else cut the lining and straps of his hard hat so that it was unwearable, (6) Hodge failed to "lock out" the conveyor systems and saw equipment before performing maintenance on them,[4] and (7) Hodge had been sleeping on

---

[3] Ables is also known as "Chainsaw."

[4] The term "locking out" refers to the policy of shutting down a machine and placing a master lock on the switch so that the machine could not be restarted unless the lock was removed. Doc. 37, exh. 4, Deposition of Kevin Hodge [hereinafter "Hodge Depo."] at p. 32; Doc. 27, exh. 7, Deposition of Ronald Steinmeyer [hereinafter "Steinmeyer Depo."] at p. 35.

the job.[5] The Plaintiff also complained that when he approached Pinner with his concerns, Pinner said he did not want to hear about what was going on between the Plaintiff and Ables and that if he heard any more from either one of them, they both would be fired.[6] According to the Plaintiff, Sparks told the Plaintiff to "drop it."[7] Shortly thereafter, on November 14, 2003, Steinmeyer met with the Plaintiff to initiate an investigation into the Plaintiff's complaints. The Plaintiff told Steinmeyer what he had told Sparks, except that apparently the Plaintiff did not tell Steinmeyer that Hodge had failed to "lock out" equipment.[8] The Plaintiff also complained to Steinmeyer that Hodge had told him to wear chaps whenever he cut logs with the chainsaw, that Hodge unplugged one of the "squawk boxes" in his cab,[9] and that Hodge criticized his log cutting technique.[10]

Steinmeyer found no evidence to corroborate the Plaintiff's allegations that Hodge threw firecrackers into cabs or was sleeping on the job. Steinmeyer also concluded that Hodge had turned off one of the Plaintiff's squawk boxes because when both boxes in the

---

[5] Doc. 37, exh. 2a & 2b, May 2, 2004 Deposition of Plaintiff Kenneth Bell [hereinafter "Bell Depo. 1"] at p. 136-41. The Plaintiff also called an unidentified person at Georgia-Pacific's headquarters in Atlanta and told her of the harassment and "unsafe conduct" occurring at the Cross City mill. Id. at 144. The record does not contain any more specifics about the Plaintiff's conversation with this person.

[6] Bell Depo. 1 at p. 141-42; Doc. 37, exh. 2d, Bell deposition exhibit 14.

[7] Bell Depo. 1 at p. 139.

[8] Bell Depo. 1 at p. 147-48; Doc. 37, exh. 2d, Bell deposition exhibit 14; Doc. 37, exh. 9, Declaration of Steinmeyer [hereinafter "Steinmeyer Decl."] at ¶ 5.  The Plaintiff agrees that Steinmeyer accurately wrote down all of his complaints. Bell Depo. 1 at p. 167.

[9] The squawk box is a communications device inside the cab which allows the Plaintiff to communicate with others around the mill. There were two squawk boxes in the Plaintiff's cab. Bell Depo. 1 at p. 206-07.

[10] Doc. 37, exh. 2d, Bell deposition exhibit 14.

cab are turned on, the Plaintiff's box made a loud squealing noise that could be heard on all the other boxes throughout the mill.[11] With respect to the complaints that Hodge told the Plaintiff to wear chaps when using the chainsaw and that the Plaintiff was incorrectly cutting logs, Steinmeyer found that Hodge was simply enforcing company policies.[12] While Steinmeyer found nothing serious about the these complaints, he found it necessary to counsel Hodge for leaving a chainsaw running unattended and for not taking disciplinary actions against employees responsible for cutting the liner and straps out of the Plaintiff's hard hat.[13] A counseling memo written by Sparks was placed in Hodge's personnel file.[14]

On November 20, 2003, two days after Steinmeyer and Sparks counseled Hodge, Hodge suspended the Plaintiff for three days without pay for taking too long on a break.[15] One week later, the Plaintiff spoke with Steinmeyer about the suspension. He did not deny that he took a longer break than permitted, but explained for the first time that his tardiness was due to a kidney condition which makes him spend more time in the bathroom.[16] Steinmeyer then conferred with Sparks and the human resources director, and they

---

[11] Steinmeyer Decl. at ¶ 7; Steinmeyer Depo. at p. 59-60; Bell Depo. 1 at p. 207; Doc. 37, exh. 8, Deposition of David Ables at p.19.

[12] Steinmeyer Decl. at ¶ 8.

[13] Steinmeyer Depo. at p. 62-64 & exh. 1.

[14] Id. at exh. 1.

[15] Bell Depo. 1 at p. 168 & exh. 15.

[16] Bell Depo. 1 at p. 168-70; Steinmeyer Decl. at ¶ 9.

concluded that the suspension should be revoked.[17]  The Plaintiff was compensated for three days of lost pay and the disciplinary record was removed from his file.[18]

On November 29, 2003, the Plaintiff filed three grievances in accordance with the mill's collective bargaining agreement.[19] In the grievances the Plaintiff accused Hodge of harassing him, sleeping on the job, throwing firecrackers, and destroying his personal safety equipment. The Plaintiff sought termination of Hodge for these "offenses and harassment" and "to prevent injury of a person or a fatality due to his negligence."[20] The Plaintiff also complained that Pinner and Sparks failed to take action to stop the harassment. When Steinmeyer learned of the grievances he recommended to Sparks that the Plaintiff be transferred away from Hodge and the chip and saw mill and temporarily placed in the planer mill (a separate facility nearby where the final finish is put on the wood) until he could complete his investigation of the Plaintiff's grievances.[21] The Plaintiff was transferred to the planer mill on December 3, 2003, where he would continue to work nights

---

[17] Steinmeyer Decl. at ¶ 9.

[18] Bell Depo. 1 at p. 169 & 201; Steinmeyer Decl. at ¶ 9.

[19] Doc. 37, exh. 2d, Bell deposition exhibit 16.

[20] Id.

[21] Steinmeyer Decl. at ¶ 10; Bell Depo. 1 at p. 173.

and receive the same pay and benefits.[22] His duties at the planer mill were to pilot a large forklift used to move lumber around the mill.[23]

Two weeks after his transfer, on December 16, 2003, the Plaintiff reported that he had tripped over a steel rod protruding out of a concrete walkway at the planer mill and had injured his knee.[24] Tests showed that the Plaintiff had torn ligaments in his knee.[25] Although his doctor released him to return to work on light duty status, the Plaintiff never returned to work at Georgia-Pacific.[26] He testified at his deposition in May of 2004, that he was physically able to return, but had not done so because his phone calls to Sparks and Steinmeyer about the status of his employment had not been returned.[27] The Plaintiff also testified that he did not want his old job as saw operator if it meant that Hodge would be his supervisor.[28] The Plaintiff's workers' compensation claim was disputed by Georgia-Pacific immediately after the accident.[29] The subsequent workers' compensation suit eventually settled in June of 2004 with a disbursement to the Plaintiff.

---

[22] Bell Depo. 1 at p. 121 & 175; Doc. 37, exh. 5, Deposition of Kenneth Sparks [hereinafter "Sparks Depo."] at p. 13, 26-27; Deposition of Ron Pinner [hereinafter "Pinner Depo."] at p. 7-9.

[23] Sparks Depo. at p. 13; Pinner Depo. at p. 7-9.

[24] Bell Depo. 1 at p. 18-19.

[25] Id. at p. 70-71.

[26] Id.

[27] Id. at p. 71.

[28] Id. at p. 77-78. At the Plaintiff's August 2004 deposition, he reaffirmed that he would not return to work if Hodge was his supervisor. Doc. 37, exh. 2e, August 19, 2004 Deposition of Kenneth Bell [hereinafter "Bell Depo. 2"] at p. 42-43.

[29] Doc. 38, exh. 2.

On May 31, 2004, the Plaintiff sent a letter to Georgia-Pacific requesting that he be contacted and told if he was still employed at the mill or if he should search for other work.[30] Sparks was, in his own words, "perplexed" by the Plaintiff's letter, since the Plaintiff had been absent for over five months without medical or other excuse.[31] Sparks wrote back and scheduled a meeting for June 28th to discuss the Plaintiff's employment status.[32] On the day of the meeting, the Plaintiff arrived at the mill with a friend, James Butler, who was not a mill employee. The Plaintiff wanted Butler to be present during the meeting as a witness in case any "harassment" occurred.[33] Sparks refused to allow Butler to attend the meeting and told the Plaintiff that he would be adequately represented by the Union and human resources personnel.[34] The Plaintiff insisted, and when Sparks did not relent, the Plaintiff  walked out.[35] Later that day, Sparks sent a letter informing the Plaintiff that his employment had been terminated for refusing to attend the meeting.[36]

The Plaintiff's amended complaint is framed in two counts. Count one alleges that Georgia-Pacific violated Florida's Whistle-blower's Act, § 448.102(3), Fla. Stat., by retaliating against him for having complained of unsafe working conditions. Count two

---

[30] Bell Depo. 2 at p. 21 & exh. 23.

[31] Sparks Depo. at exh. 7.

[32] Id.

[33] Bell Depo. 2 at p. 26-32.

[34] Id.

[35] Id.

[36] Id. at exh. 25.

7

alleges that Georgia-Pacific violated Florida's Workers' Compensation Law, § 440.205, Fla. Stat., by terminating his employment in retaliation for having filed a workers' compensation claim. The Defendant moves for summary judgment on both counts, contending that the Plaintiff has failed to create an issue of fact with respect to the elements of his prima facie case or that he has failed to rebut the Defendant's legitimate, non-retaliatory reasons for its employment decisions. The Court concludes that summary judgment in favor of the Defendant is appropriate.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."[37]  As the Supreme Court held in Celotex Corp. v. Catrett, the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.[38]  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[39]  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to

---

[37] Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

[38] 477 U.S. 317 (1986).

[39] Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## Discussion

### A. Whistleblower's Act Claim

The Plaintiff's first claim is brought under Florida's Whistleblower's Act, which states in pertinent part:

> An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.[40]

Under Florida law, whistleblower's claims are analyzed using the same framework used for Title VII retaliation claims.[41]  Under this framework, to establish a prima facie case of retaliation in the absence of direct evidence of retaliatory intent[42] the Plaintiff must show that (1) there was a statutorily protected participation, (2) that an adverse employment action occurred, and (3) that there was a causal link between the participation and the adverse employment action.[43] Once the prima facie case is established, the employer may

---

[40] § 448.102(3), Fla. Stat. (2003).  See also Golf Channel v. Jenkins, 752 So. 2d 561 (Fla. 2000).

[41] Rice-Lamar v. City of Fort Lauderdale, 853 So. 2d 1125, 1132-33 (Fla. 4th DCA 2003). See also Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000).

[42] The Plaintiff has not produced any direct evidence of retaliatory motivation.

[43] See, e.g., Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998).

proffer legitimate, non-retaliatory reasons for the adverse employment actions.[44] If the employer is successful on this score, the Plaintiff must then come forward with evidence, which may include evidence of the prima facie case, sufficient to create a genuine issue of fact that each of the proffered reasons are merely pretext for unlawful retaliation.[45]

### 1. *Protected Activity*

In order to satisfy the first element of his prima facie case under the Whistleblowers' Act, the Plaintiff must produce evidence that he objected to or refused to participate in an activity, policy, or practice of Georgia-Pacific which is in violation of a law, rule, or regulation. To this end, the Plaintiff says the evidence will show that he objected to or voiced concerns about unsafe conditions amounting to violations of Occupational Safety and Heath Administration ("OSHA") regulations. Specifically, the Plaintiff says that he complained of the following OSHA violations to various persons at the mill, including supervisors and co-workers: (1) Hodge throwing firecrackers into his and other cabs at the mill, (2) Hodge turning off his squawk box, (3) Hodge cutting the liner and straps out of his hard hat, (4) Hodge placing a running chainsaw into cabs,(5) Hodge not "locking out" equipment before performing maintenance, (6) poor lighting near his cab, (7) broken

---

[44] Section 448.103(1)(c), Fla. Stat., provides.

> An employee may not recover in any action brought pursuant to this subsection if . . . the retaliatory personnel action was predicated upon a ground other than the employee's exercise of a right protected by this act.

[45] See Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).

handrails, (8) boards falling on people, and (9) holes in the floors.[46] It appears that some of these complaints concern possible OSHA violations at the mill. Accordingly, the Court is satisfied that the Plaintiff has established the first element of the prima facie case.

### 2. *Adverse Employment Actions and Retaliatory Harassment*

The Plaintiff maintains that he suffered four adverse employment actions as a result of his protected activity: (1) his three day suspension, which was subsequently overturned, (2) his transfer to the planer mill, (3) the decision to dispute his workers' compensation claim, and (4) his termination.[47] "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'"[48] "Conduct that falls short of an ultimate employment decision must meet some threshold level of substantiality to be cognizable. . . ."[49] "It is clear, however, that not all conduct by an employer negatively affecting an employee constitutes adverse employment action."[50] "Whether an action is sufficient to constitute an adverse employment action for purposes

---

[46] Doc. 38, Affidavit of Bell at ¶ 8; Bell Depo. 1 at p. 37-38, 141, 147. The complaints concerning poor lighting, boards falling on people, and holes in the floors were made to coworkers.

[47] Florida's Whistleblowers' Act prohibits "retaliatory personnel action[s]." § 448.102, Fla. Stat. (2004). A "retaliatory personnel action" means "the discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment." § 448.101(5), Fla. Stat. (2004).

[48] Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3rd Cir. 1997)).

[49] Id.

[50] Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001).

of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard."[51] Applying this standard to the facts presented, the Court concludes that the suspension, transfer, and the decision to contest the Plaintiff's workers' compensation claim were not adverse employment actions, but that the Plaintiff's termination was an adverse action.

The undisputed facts show that the Plaintiff's three day suspension was not sufficiently adverse to be actionable. The suspension was overturned as soon as the Plaintiff made the appropriate supervisor aware of his medical excuse for committing the underlying offense of taking too long on break. The Plaintiff was compensated for his lost wages, and the record of the suspension was expunged from his file. Accordingly, the suspension resulted in no tangible harm to the Plaintiff and did not constitute a serious and material change in the terms and conditions of his employment.

The transfer to the nearby planer mill was also not an adverse employment action. It is undisputed that the Plaintiff kept the same pay, benefits, and hours. The Plaintiff argues that the transfer was nevertheless adverse because he was made to perform more menial tasks, such as sweeping and picking up trash, and because his planer mill position offered less opportunity for promotion or raises. Even so, this would not make the transfer sufficiently adverse from an objective standpoint. The uncontradicted evidence shows that the Plaintiff's responsibilities at the planer mill were not limited to sweeping and picking up trash. The Plaintiff was also responsible for operating a rather large folk lift (several times

---

[51] Gupta, 212 F.3d at 587 (citing Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1448-49 (11th Cir. 1998)).

larger than a car, according to Pinner[52]) and using it to transport large stacks of lumber around the mill. Moreover, it is uncontroverted that the Plaintiff's transfer was only temporary and taken to remove the Plaintiff from Hodge and the saw mill until his problems with Hodge and his safety concerns could be investigated and resolved.[53] Indeed, the Plaintiff was only at his new job for two weeks before he took leave for his injury and never returned, hardly enough time for the transfer to affect his promotional and raise opportunities. Thus, the temporary transfer was not sufficiently final to be actionable.[54] Furthermore, the subjective component of the analysis is not sufficiently present. The Plaintiff never formally objected to the transfer at any time, although he told Steinmeyer prior to the transfer that he did not like it.[55] But, the Plaintiff makes it clear that he did not want to remain under Hodge's supervision.[56] That the Defendant chose to temporarily transfer the Plaintiff to a comparable position instead of terminating Hodge does not make the transfer adverse. Accordingly, the Plaintiff has not created a genuine issue of fact that his transfer to the planer mill was an adverse employment action.[57]

---

[52] Pinner Depo. at p. 7-9; Sparks Depo. at p. 13.

[53] Sparks Depo. at p. 11, 12; Steinmeyer Decl. at ¶ 10; Bell Depo. 1 at p. 173.

[54] See Davis, 245 F.3d at 1245 (holding that temporary reassignment without any tangible harm was not actionable under Title VII); Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir. 1987) (holding that temporary transfer with no loss in pay or benefits is not an adverse employment action).

[55] Bell Depo. 1 at p. 174.

[56] Bell Depo. 1 at p. 71; Bell Depo. 2 at p. 42-43.

[57] Additionally, the Court concludes that the transfer was taken for a legitimate, non-retaliatory reason - to remove the Plaintiff from the source of the alleged harassment and safety (continued...)

The Plaintiff cites the Eleventh Circuit Court of Appeals' decision in <u>Riccard v. Prudential Insurance Company</u>[58] as support for his contention that the Defendant's decision to dispute his workers' compensation claim was an adverse employment action. In <u>Riccard</u>, the plaintiff alleged that his former employer had in bad faith refused to settle his workers' compensation claim so long as the plaintiff's discrimination suit was still ongoing. The Court of Appeals reversed the district court's dismissal of the retaliation claim and held that the plaintiff had alleged an adverse employment action.[59] According to the court, the employer's claimed "refusal to allow [the plaintiff's] allegedly valid worker's compensation claim to settle or to let him receive medical benefits to which he allegedly was lawfully entitled in retaliation for the discrimination lawsuit he filed against it potentially alters privileges of employment and thus could constitute an adverse employment action."[60] <u>Riccard</u> is readily distinguishable. The court there was concerned with the district court's dismissal for failure to state a claim. As such, the plaintiff did not need to support his allegations with facts. In this case, it is undisputed that the Plaintiff's workers' compensation claim was eventually settled for a cash payment to the Plaintiff. Therefore,

---

[57](...continued)
concerns. Again, the Plaintiff testified on more than one occasion that he did not want to continue to work under Hodge. Bell Depo. 1 at p. 71; Bell Depo. 2 at p. 42-43. The Plaintiff has offered no evidence to create an issue of fact that these legitimate reasons were pretext for unlawful retaliation.

[58] 307 F.3d 1277 (11th Cir. 2002).

[59] <u>Id.</u> at 1292-93 (holding that the district court "erred in determining that the bad faith hindrance of the settlement of a worker's compensation claim or payment of medical benefits could not as a matter of law constitute an adverse employment action and serve as the basis of a retaliation claim.").

[60] <u>Id.</u>

the Plaintiff has not established that he suffered any tangible harm by the Defendant's decision to contest his claim.[61]

The Plaintiff also contends that, in addition to suffering these adverse actions, he was subjected to retaliatory harassment for having engaged in protected activities. Retaliatory harassment under Florida's Whistleblowers' Act is not actionable unless it is "sufficiently severe and pervasive to alter the conditions of the victim's employment and

---

[61] Davis, 245 F.3d at 1239 (holding that although direct economic consequences is not required in all cases, the impact on a plaintiff's terms, conditions, or privileges of employment must be tangible).

The Defendant contends that its decision to dispute the Plaintiff's workers' compensation claim may not be considered an adverse employment action because the Plaintiff has not shown that the decision was made in bad faith. This argument has some appeal. Naturally, an employee is not entitled to receive workers' compensation benefits merely upon the filing of a claim. His or her privilege is only to have valid claims paid, and the employer has the concomitant obligation to pay only valid claims. This means that an employer does not necessarily alter the terms, conditions, or privileges of employment when it chooses to contest the validity of an employee's claim. It is only when the employer does so in bad faith that its decision can be said to impact adversely the privileges of employment. It follows then the inquiry collapses into a determination as to whether the employer's legitimate, non-retaliatory reasons for contesting the claim were the real reasons.

In this regard, the Defendant has presented evidence that it denied the Plaintiff's claim because it was suspicious about its validity. There were no witnesses to the accident; other employees saw the Plaintiff walking about and working as usual after the accident; and there was some evidence that the Plaintiff's injury was preexisting. Sparks Depo. at p. 36-37; Steinmeyer Depo. at p. 40-42. In rebuttal, the Plaintiff presented evidence that the accident could have happened the way he said it did - there were rods protruding from the floor and the his knee injury is supported by medical evidence. However, the Plaintiff's evidence does not exclude the possibility that his injury did not occur at the mill. But, even if the decision-makers were mistaken in contesting the claim, the Plaintiff has presented no evidence suggesting that their suspicions were insincere and not the real reason for their decision. Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984) ("[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (holding that the relevant inquiry is whether the decision-makers believed the reasons proffered). Accordingly, summary judgment in favor of the Defendant would be appropriate for this reason as well.

create an abusive working environment."[62] Whether a work environment is sufficiently severe and pervasive is judged by looking to the totality of the circumstances, including the frequency of the harassing conduct, its severity, whether it is physically threatening, and whether it unreasonably interferes with an employee's work performance.[63] The Plaintiff argues that this standard is met when one considers together evidence of his suspension, close monitoring, constant reprimands by Hodge, being called a "liar" and a "motherfucker" by Hodge, Sparks telling him to "shut up" and "look at me when I'm talking to you," Hodge unplugging his squawk box, and being told by Pinner that his "ass is going down the road" if he heard any more from the Plaintiff. The Court disagrees. The only evidence submitted to support the accusation of "close monitoring" is the Plaintiff's vague assertion that Hodge, Pinner, Sparks, and Steinmeyer "often" stood behind the Plaintiff looking over his shoulder while he worked.[64] This is not sufficiently severe or pervasive. The record contains evidence of only two written reprimands by Hodge: one for taking too long on break, which was expunged, and one for coming to work late, which the Plaintiff does not dispute that he did.[65] Thus, the "constant" reprimands contention is belied by the record. Hodge's verbal abuse apparently occurred only once, and is therefore not sufficiently severe.[66] Hodge's

---

[62] Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). See also Padron v. BellSouth Telecommunications, Inc., 196 F. Supp. 2d 1250, 1259-60 (S.D. Fla. 2002) (holding that retaliatory harassment is actionable under Florida's Whistleblower's Act and citing Meritor Sav. Bank).

[63] See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001).

[64] Doc. 38, Affidavit of Bell at ¶ 11.

[65] Bell Depo. 1 at p. 132-33.

[66] Doc. 38, Affidavit of Bell at ¶ 11.

unplugging the Plaintiff's squawk box was not retaliatory because, as explained by the Plaintiff's own testimony, the box was turned off because it produced a loud squeal that disrupted communications throughout the plant.[67] At any rate, the box was unplugged prior to any protected conduct. The Plaintiff's own testimony shows that Pinner's statement that the Plaintiff's "ass is going down the road" was directed at both the Plaintiff and his cab-mate, Ables, as a warning that if they did not resolve their differences, he would fire both of them.[68] Thus, even when taken together, these actions are not sufficiently severe and pervasive to constitute actionable harassment and sound more like common workplace squabbling.

Accordingly, the only adverse employment action in this case is the Plaintiff's termination in June of 2004, which the Defendant does not dispute is an adverse action.

### 3. *Causal Connection*

To establish the requisite causal connection in presenting a prima facie case, the Plaintiff need only show that the protected activity and his termination were not "wholly unrelated."[69] A plaintiff satisfies this element if he provides sufficient evidence "of knowledge of the protected expression and 'that there was a close temporal proximity between this awareness and the adverse . . . action.'"[70]

---

[67] Bell Depo. 1 at p. 207.

[68] Id. at p. 141-42.

[69] Gupta, 212 F.3d at 590.

[70] Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1180 n. 30 (11th Cir. 2003)).

The Plaintiff has failed to create an issue of fact with respect to the causation element. The record shows that the decision-maker in the decision to terminate the Plaintiff was Sparks. There is evidence that Sparks was aware of some, but not all of the Plaintiff's complaints, but the Court is satisfied that some of the complaints Sparks was aware of might be OSHA violations. For example, there is evidence that Sparks was aware that the Plaintiff complained that Hodge was not "locking out" the equipment and that he complained about broken handrails.[71] However, causation is not established by mere awareness alone, and in this case it is not established because the termination was too remote in time. The latest example of protected activity occurred in November of 2003, and the Plaintiff was terminated in late June of 2004 - roughly seven months later. A seven month period between the protected activity and the termination is too protracted, standing alone, to give rise to a reasonable inference that the termination was caused by the protected activity.[72] Accordingly, the Plaintiff has failed to establish a prima facie case under Florida's Whistleblower's Act.

### 4. *Legitimate, Non-retaliatory Reasons and Pretext*

In addition to having failed to establish a prima facie case, the Plaintiff has also failed to create a genuine issue of fact that the Defendant's legitimate, non-retaliatory reason for terminating the Plaintiff was merely pretext for unlawful retaliation. The Defendant's burden

---

[71] Sparks Depo. at p. 21, 25; Hodge Depo. at p. 33; Steinmeyer Depo. at p. 20.

[72] Higdon, 393 F.3d at 1221 (holding that a three month period between protected activity and adverse action, without more, was not sufficient to establish causation element); Wascura v. City of South Miami, 257 F.3d 1238, 1245 (11th Cir. 2001) (holding that a three and one-half month period was not close temporal proximity).

in articulating legitimate, non-retaliatory reasons for its employment decisions is not difficult to sustain. The burden is one of production, not persuasion, and the Defendant need only produce credible evidence supporting its decision.[73] It need not "persuade the court that it was actually motivated by the proffered reasons."[74] To this end, the Defendant has produced credible evidence that it terminated the Plaintiff, not because he complained about safety problems at the mill, but because he refused to attend a scheduled meeting to discuss his six month absence from work.[75]

Once the Defendant has articulated a legitimate, non-retaliatory reason for its employment decision, "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing a prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."[76] "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that decision."[77] If the Plaintiff fails to proffer sufficient evidence to create a

---

[73] Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

[74] Id.

[75] Bell Depo. 2 at p. 26-32, exh. 25.

[76] Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).

[77] Chapman, 229 F.3d at 1030 (en banc).

genuine issue of material fact as to whether the Defendant's proffered reason is pretextual, the Defendant is entitled to summary judgment.[78]

The Plaintiff makes three arguments to show pretext; none of which are availing. First, the Plaintiff argues that no other employee was terminated for bringing a friend to a company meeting. He also points out that Pinner was not fired even though he testified that he once had a friend present at the mill when discussing work related issues.[79] This argument is unavailing because it misconstrues the Defendant's reason for the termination. The Plaintiff was not terminated for bringing a friend to a meeting; according to the Defendant, he was terminated because he refused to attend a meeting called to discuss his prolonged absence from work. As such, Pinner is simply not a valid comparator. Evidence that no other employee at the mill was terminated for bringing a friend to a meeting is not evidence of pretext.

Second, the Plaintiff argues that his refusal to attend the employment meeting was not the real reason for his termination because the Defendant violated its own discipline policies by terminating him without first taking progressive discipline. The Cross City mill follows a policy of progressive discipline whereby for certain infractions an employee is given an oral warning for the first offense, followed by written warnings, suspension, and ultimately termination for repeated violations.[80] There is nothing in the record to suggest that refusing to attend a meeting concerning one's absence from work is an infraction

---

[78] Wascura, 257 F.3d at 1243.

[79] Pinner Depo. at p. 24-25.

[80] Steinmeyer Depo. at p. 71-73.

subject to progressive discipline or that the discipline scheme had to be followed in every instance. Moreover, common sense tells us that progressive discipline of the Plaintiff in this situation would be pointless. The Court cannot imagine what use oral warnings, reprimands, and suspensions would be in convincing an employee who had been absent from work for nearly six months to come to work and discuss his employment. Thus, that the Defendant did not impose progressive discipline on the Plaintiff for refusing to attend a meeting to discuss his lengthy absence from work is insufficient to permit a reasonable factfinder to conclude that pretext exists.

Lastly, the Plaintiff argues that there are inconsistencies, incoherencies, or contradictions in the proffered reason for his termination. Citing to the Defendant's motion for summary judgment, the Plaintiff again recasts the Defendant's explanation and suggests that the Defendant said it fired him because he failed to report to work for over six months and failed to keep the Defendant appraised of his whereabouts and reason for his absence. He then challenges this assertion with evidence that he tried to call Sparks and Steinmeyer seven or eight times during his absence to inquire about his work status and that Sparks said he knew the Plaintiff was out because of his injury.[81] However, the Plaintiff's accusations of inconsistencies, incoherencies, or contradictions are belied by the termination letter written by Sparks to the Plaintiff on June 28, 2004, the date of the failed meeting. In the letter, Sparks informs the Plaintiff that: "Based on your refusal to attend this morning's meeting to discuss your absences from work over the last six months, we are

---

[81] Sparks Depo. at p. 45.

terminating your employment effective immediately."[82] This has consistently been the reason offered for making the decision to terminate the Plaintiff's employment, and evidence that the Plaintiff attempted to contact Sparks and Steinmeyer during his absence does not call this reason into doubt.

Accordingly, the Court concludes that in addition to failing to present a prima facie case, the Plaintiff has failed to create an issue of fact that the proffered legitimate, non-retaliatory reason for his termination was merely pretext for unlawful retaliation.

### B. The Workers' Compensation Retaliation Claim

The Plaintiff's second claim is brought under § 440.205, Fla. Stat., Florida's Workers' Compensation Law, which provides:

> No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.

The prima facie case of under § 440.205 is essentially the same as § 448.102(3). The Plaintiff must show that he (1) engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the Plaintiff's protected activities.[83] The Court concludes that the Plaintiff has established a prima facie case of retaliation under the Workers' Compensation Law. He filed a workers' compensation claim, the termination decision-maker knew about it, and he was terminated days after the claim settled.

---

[82] Bell Depo. 2 at exh. 25.

[83] Humphrey v. Sears, Roebuck, & Co., 192 F. Supp. 2d 1371, 1374 (S.D. Fla. 2002).

However, the Plaintiff has not presented an issue of fact that the legitimate reason offered by the Defendant to explain its decision to terminate the Plaintiff's employment was merely pretext for his having filed a workers' compensation claim. In addition to the inadequate arguments and evidence discussed above offered by the Plaintiff in support of his pretext assertion, the Plaintiff merely takes issue with the Defendant's decision to dispute the claim, arguing that there was ample evidence to support his injury, and states that he knows of two other employees who were injured and subsequently terminated. First, quarreling with the Defendant's decision to dispute his workers' compensation claim is not evidence that the proffered reason for the termination decision was pretextual. It should be obvious that whether the Defendant was wrong to challenge the workers' compensation claim says nothing about whether its stated reason for the termination was not the real reason. Further, evidence that two other employees were terminated after being injured is not evidence that these employees were terminated for filing a workers' compensation claim. Indeed, there is no evidence that these employees even filed workers' compensation claims or were otherwise situated similarly to the Plaintiff.[84] Lastly, the prima facie case evidence is also not sufficiently strong to create a triable issue. While the record shows that the Plaintiff was terminated shortly after the workers' compensation claim was settled, this evidence is weakened by the fact that the Plaintiff was terminated over six months after he filed his claim. Accordingly, summary judgment is appropriate in favor of the Defendant with respect to the Plaintiff's workers' compensation retaliation claim.

---

[84] Bell Depo. 2 at p. 36 (admitting that the Plaintiff does not know why the facts of the other two employees' cases or whether they even filed workers' compensations claims).

**Conclusion**

Accordingly, upon due consideration, it is adjudged that:

(1) the Defendant's motion for summary judgment (Doc. 37) is GRANTED in all respects, and the Clerk is directed to enter judgment in favor of Defendant Georgia-Pacific Corporation and against Plaintiff Kenneth Bell;

(2) the Defendant's motion for leave to file a reply brief (Doc. 39) is DENIED as moot;

(3) the Defendant's motion to strike portions of the Plaintiff's response to the motion for summary judgment (Doc. 40) is DENIED as moot;

(4) the Defendant's motion to continue the trial in this matter (Doc. 43) is DENIED as moot; and

(5) the Clerk is further directed to terminate any pending motions and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 17th day of May, 2005.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy